John Williams on behalf of opponent Lonnie Keenan. I'd like to take 5 minutes of my time for rebuttal and I'll keep my eye on the clock. Great. Thank you. I believe that many of the issues in this appeal are well briefed, but I'd like to take this opportunity to put a finer point on a few key issues this morning. And I'm going to start with the accrual of the labor code section 970 claim. While there is a dispute in this case, whether a one or three-year statute of limitations applies to Keenan's labor code 970 claim, if Keenan's position is correct on that accrual issue, his claim is timely under either limitations period. As a threshold issue, the timing of when Keenan should have discovered Martinez's fraud presented a highly controverted question of fact. That issue was further complicated by representations that Martinez continually made to Keenan about addressing the poaching of his protected accounts by other salespersons. From those representations, Martinez continuously led Keenan to believe that those accounts remained protected for his benefit and that those other salespersons were violating either Martinez's directives or company policy. But what that information from Martinez did not reveal was that anyone was doing something unlawful, which is required to start the running of the statute of limitations. As the court knows from our briefing, one of our chief, one of the chief errors we believe the district court made was that it conflated a violation of company policy with the requisite notice of unlawful conduct needed to start the limitations period. The two are not the same thing. For example, while it may have been a violation of company policy to poach protected accounts, such conduct was not actionable, especially where Martinez maintained the discretion to address it. Instead, it was only when Martinez changed course and told Keenan that the Callahan accounts were never protected for his benefit that Keenan knew for the first time of actionable fraudulent conduct. In the interim, Martinez's repeated assurances to both Keenan and to Park that he was going to look into the actions of those other salespersons caused Keenan to reasonably, reasonably believe three things. One, that the sales accounts were protected for his benefit. Two, that those other salespersons were violating the company's policies. And three, that Martinez would enforce that company policy consistent with the authority as the quote final arbiter to assign those accounts to Keenan in the first place and to assure that they were protected for Keenan's benefit. What those assurances did not reveal to Keenan was that Martinez had lied to him in the first place. It was only when Martinez told Keenan on March 27, 2017, that those accounts were never protected, that Keenan was put on adequate notice of actionable fraud. It is only then that his claims against Cox accrued. Keenan filed his lawsuit on December 15, 2017, less than a year later. Now, one inference the was that when those other salespersons were poaching and Martinez didn't do anything to correct it, Keenan was put on notice of Martinez's original fraud. But there is a competing inference which the district court was obliged to draw in Keenan's favor on summary judgment. And that is that Martinez's continuous statements that he would address the poaching and that he would credit any poached sales to Keenan's sales quotas meant that Keenan was not put on notice of that fraud at that time. Dr. Mary Jo Cagler. When you were making, I'm sorry, this argument, I know because you argued in your briefs very much that it's a three-year statute of limitation that applies. But I take it you're also arguing, I believe, that even under a one-year statute of limitation applies that there was, this was brought in time based on the arguments you've been making. Is that correct? Dr. Michael L. Reilly. That's correct. There is a disagreement between the parties as to whether a one-year or a three-year statute applies. My position is the court doesn't need to reach that issue if it finds that accrual occurred when Keenan was first notified on March 27, 2017, that in fact, the Callahan accounts were never protected. That Martinez, when he made that representation, those accounts had never been protected in the first place. So even under the one-year statute, Keenan's 970 claim would be timely in that situation. The other thing I want to emphasize to the court. Dr. Mary Jo Cagler. I was just curious. Is there a reason you chose not to pursue a claim for common law fraud? Dr. Michael L. Reilly. Your Honor, I wasn't trial counsel in the case, so I can't answer the question. The claims are what they are, and I'm not sure why that claim for common law fraud was not pursued. I did want to talk about this idea of inquiry notice, though. And I want to make sure that the court is clear on the record that if Keenan was ever put on any kind of inquiry notice by the poaching of the Callahan accounts, he did timely inquire. He inquired to his immediate supervisor, Park, who then elevated the issue to Martinez, who again repeated that he would look into it, implicitly acknowledging that it was an issue which garnered inquiry, rather than simply disputing that those accounts were never protected, as he would only later assert. Certainly Martinez could have done that sooner, but he didn't do that. In that situation, a jury could find that Keenan could reasonably conclude that Martinez's prior representations of protected accounts was valid, and that Martinez would address the issue consistent  Dr. Michael L. Reilly. You indicated that the court need not look at the statute of records for factual development of the accrual of the claim, but it seems to me that there is a spectrum of time in which a prior fact could determine that it accrued, notwithstanding the repetitive questions to Martinez and his looking into it. And so it would seem to me that court, if it finds that the one-year statute of limitations applies, it's still going to be an issue because of when it actually accrued, when the claim actually accrued. Well, I would agree with your Honor's question. The issue of accruals is a factual issue that should not have been decided as a matter of law and summary judgment. So to the extent that the court is indicating it, that if the one-year statute applies, there's still a material question of fact as to the accrual issue to apply that one-year statute of limitations. And here, what the district court did was it drew the inference against Keenan at potentially the earliest possible date. Even while Keenan was still in that initial phase of the process where his sales quota did not count towards his commission. I believe the district court said that the cause of action accrued as early as November of 2015, or yes, 2015, right after he started working, certainly into the beginning of 2016. It wasn't until May of 2016 that Keenan's commission was actually triggered to his sales quota. So there is a question of fact, even if the one-year statute applies, and certainly that accrual issue is a material issue that will need to be determined by a jury and should not have been determined on summary judgment. Had you considered, the parties considered, certifying the question of whether 972 is a penalty to the California Supreme Court? We did not, Your Honor. We did not. You feel the law is clear enough that this court can make that determination based upon the law that's been cited to us in the briefs? Well, I think there's arguments to be made on both sides. I don't think that there is a single definitive decision on that issue. And we've cited to various tests that the test in particular, and there are some cases from this circuit that have applied that test, and I think it would be applicable here. We talked about the Perdue opinion, which of course isn't binding on this court, but which followed the Chavarria decision, which looked at the gravamen of that cause of action and said that it was meant to affect reparation to one aggrieved and not a vindication of public justice. We also talked about the more specific statute rule, how 338 is a more specific statute for the underlying nature of this claim, which is a fraud claim. So with that, I also recognize that the Aguilera decision from this court seemed to indicate that the one-year statute would apply, but as we mentioned in our brief, Aguilera didn't really analyze that issue. It just assumed the district court was correct with respect to applying the one-year statute limitations period. So there is some conflict in the law, and I think that this court can decide based upon the test that we've provided. But again, I don't think it needs to do that if it agrees with the fact that the issue of accrual is a question of fact. And that in this instance, the district court decided that accrual issue by drawing an inference against Mr. Keenan, and that that claim as to when it accrued should be determined by a jury instead. And I see that I've gone past the time I'd like to reserve. Unless there's any further questions, I'll reserve the balance of my time. All right. Thank you. So next is Ms. Pote. Pote, thank you. Yes, Pote, thank you. And may it please the court, my name is Stacey Pote and I represent Respondents Cox Communication California LLC and Daniel Martinez. And in the interest of time, I will focus my argument on the two primary holdings that district court Judge Anello made in its summary judgment ruling when it did determine that the 970 claim was barred by the statute of limitations. And the first was the issue that you've alluded to, that the 970, Labor Code 970 claim, that the one-year statute of limitation applies under California Code of Civil Procedure Section 340A. And then secondly, the accrual for several months of employment with respondent, and that was when he had actual knowledge that the terms of his employment were not as he had believed were represented to him and there was an alleged misrepresentation. And I'll get into that because those facts are based on Mr. Keenan's own admissions. So with regard to the first issue, the one-year statute of limitations applies to the Section 970 claim, and this is based on several reasons. We don't have to look into some of the complicated and more creative arguments. We can look right to the Section 320A language that applies to an action upon a statute for penalty. We can also look to 972, Labor Code Section 972, which provides the teeth for Labor Code 970 and holds that 970 claims that you're liable to the party aggrieved in a civil action for double damages resulting from such misrepresentations. Now, it is well-established California law that when you have that double damages, you have the right to actual damages plus mandatory additional damages, that equals a penalty. And we cited several cases in our brief, as did the district court judge, that that is a very well-established rule. Therefore, it is a penalty that applies under the Labor Code Section 972, which therefore makes it a penalty under Section 320A, and the one-year statute of limitation applies. Now, the case law does also support this holding, and my opposing counsel referenced the Aguilera case. I understand there wasn't a thorough analysis of the one-year versus three-year statute of limitations in that court decision. However, the court does, this court referenced that the Eastern District held that appellant's Labor Code 970 claim was under the one-year statute of limitations. And other courts, as we cited in our paper, have held likewise. Judge Anello relied on Aguilera as well as the Fennedy versus CBS case, which is out of the Central District, which we included that pretty robust analysis in our brief. And also, one issue that we really cannot overlook here is the California case law, Munoz versus Kaiser Steel Court, which actually is a very factually applicable case here, a 970 claim where a person alleges they were lured to change states, to come into the state, based on misrepresentations. And that court expressly said that the one-year statute of limitation applies to both Sections 971 and 972. So the rationale in Fennedy, which Fennedy relies on in Munoz's case, is well taken. Now, just a quick note on appellant's reliance on the Verdot versus Project Time and Cost Inc. case. That's the Northern District case. It really is distinguishable. I looked at it again yesterday, and that case, that Northern District case, is relying on Murphy versus Kenneth Cole, the case out of our Supreme Court, California Supreme Court. And that is an important case, but it is not important for our purposes. That would address Labor Code Section 226 claims, and whether that's a penalty versus wages. And it's really not applicable. And so I think the reasoning under the Fennedy case is not one that should be well taken. Additionally, turning to this accrual issue, which I think has been the focus of appellant's arguments on reply, I'd like to just bring us back to what plaintiff is really alleging in his 970 claim, because I think it helps to frame the issues, if I may. Appellant alleged that he was induced to relocate to California based on misrepresentations by the sales director, Daniel Martinez, about his compensation and about terms and conditions of employment. So first, whether the commission plan, Cox's commission plan, had a decelerator provision. That was the first alleged misrepresentation that is in the complaint and kind of framed our case. And secondly, was whether there was these protected accounts. And whether there was a misrepresentation that Mr. Keenan would have these protected accounts that had belonged to a former salesperson, Adrian Callahan. Now, when you look at those are the two buckets of alleged misrepresentations or things that Mr. Keenan says are misrepresentation. Then you look at Mr. Keenan's actual admissions. And, you know, there's a lot of creative arguments about the timeline. But Mr. Keenan, in his deposition, he laid out, you know, he had several missions. So with regard to when he found out about the fact that these terms and conditions were going to be different. And the district court does cite those in his ruling. But just to make it very clear. Because the protected accounts seem to be like the core of the alleged misrepresentation argument. So I'd like to ask you, you know, drawing on what Mr. Williams has just been arguing and what they set forth in their briefs. Assuming the circumstances in late 2015 when he first learned of the poaching, Mr. Keenan learned of poaching. Gives rise to two reasonable inferences. One inference being that Mr. Martinez misrepresented the account assignments. And the other inference being that the other sales representatives were breaching company policy outside of Martinez's control. I think that's what Mr. Williams is arguing. Is it your view that Mr. Keenan's claim would still have accrued as a matter of law in late 2015? Yes, thank you. So I, yes. When I looked to, there's been a lot of case law cited about when accrual occurs on these claims, 970 claims. And when you look at the Ninth Circuit's own opinion in Funk v. Sperry, it looks to the accrual rule when all the elements of a claim have been established. So when there was a misrepresentation and when there was an, you know, with an intent to induce reliance and there was justifiable reliance that caused damages, right? So in November of 2015, what Mr. Keenan alleged was that this was a big reason why he even was induced to come and take this job was these protected accounts. And in November of 2015, he knew that other people were selling his accounts and he raised the issue. And at that point, he knew there at that time or even, you know, maybe a few months thereafter into the beginning of 2016, that those accounts were not protected. That other people were selling on those accounts. And so at that point, he knew or had, you know, reasonable belief to understand that Mr. Martinez allegedly made a misrepresentation as to those protected accounts. But he didn't know the reason, I guess, why. I mean, whether it was, you know, and it seems like to me all the elements he had to know or the duty of inquiry or doesn't really start until he has. Mr. Keenan would have knowledge of every element here and the elements that I guess I'm kind of focused on is knowing misrepresentation. And if there's possible inference to say, well, it was a sort of administrative or management issue regarding the accounts, does that really attach at that time? I mean, and especially if we have to give, you know, the reasonable inference in the light most favorable to the plaintiff. I would look to the district court's ruling and the authority he cited with regard to the burden on the employee and on the claimant or appellant here. Once there's a suspicion, to investigate and not to sit back and sort of wait for two more years. And, you know, when there was a very knowing suspicion at a minimum that there was a misrepresentation on that behalf of, you know, the terms and conditions about these protected accounts. That at that point, the onus was on Mr. Keenan to look into it further, to do something. He clearly had a concern about it that he raised. He has a concern. And I'm just trying to, I think, you know, you on behalf of your client are trying to equate the concern versus, oh, that's when the duty, you know, inquiry really set out. And that's when the clock started. But it seems like he kept inquiring to find out and they kept telling him, you know, well, we're going to look into that. And it's written in the rules of engagement that he would have these protected accounts, if I recall correctly. And so he's inquiring, but he's finding out that, oh, he doesn't know if it's a management sort of issue or what's going on. And it's really not very clear to him until Mr. Martinez sits down with him, I guess, sometime in 2017. I think it was March when he said, yeah, we never, like, basically, we never protected them. And we can't, you know, we've given them to the folks and we can't take them back now. And I think, to your point, Your Honor, those rules of engagement, Mr. Keenan got those rules of engagement, you know, two weeks after he started. And they say the ultimate, I mean, we say this a lot, but the ultimate decider about these accounts is Daniel Martinez, the Director of Sales. And so not, there's protected accounts, you get protected accounts. It says Daniel Martinez is going to be the ultimate decision maker. So there is an issue, then, that that representation in writing was different, or so Mr. Keenan alleges, than what was told to him pre-taking the job. So that's the distinction that we make. And then also, in, you know, the district court's language about the suspicion that that, you know, he cites the Jolly case, that, you know, reasonable suspicion, then there's the duty to investigate and not to sit back on your heels. Especially in a 970 claim, where you're saying the onus of my claim is that I was, there was misrepresentations that lured me to move and take a new job. When that's what the onus of the claim is, not even a general fraud claim that could sort of develop over time. When it's, I came to this employer based on these representations, which then I find out within the first few months are not what they were told to me, then that is at that time when the claim accrues under the case law. Why isn't this case more like SILV than it is like Jolly? And with regard to the, there's a lot of case law that's been cited as to the different elements that need to be established for accrual. And for me, I was going back to what I think is the actual binding authority here with Funke v. Sperry in the Ninth Circuit. And for the court to take a look at Jolly, I know that Jolly, I admittedly, Jolly has different factual underpinning here. But that, I think. But my question was, why isn't this case more like SILV, the SILV case than it is like Jolly? And I believe that with regard to, it goes back to the policy that the employee has some obligation to look into the underlying suspicion rather than resting on that. And I believe my time is up, but I will, of course, take any more questions. Sure, let me see if anybody has any other questions. Well, we didn't get into the question of the implied covenant good faith and fair dealing. The implied in fact contract claim was not appealed, but Keenan is still arguing that there's an express contract. And you alluded to the rules of engagement, his position being that that taken together with the offer of the employment constitute an express contract, which would then, under his theory, preserve his implied covenant because he'd have an express contract to derive that claim from. So what, could you explain what your position is with respect to whether that there's an implied or rather an express contract in this case that was pled? Thank you. Yes. So for me, the implied covenant of good faith and fair dealing is overridden by the express at will agreement that's set forth in the offer letter and all of the various contracts where Mr. Keenan was an express at will employee and the terms and conditions of his employment were also up to the discretion of his employer, which is very common in California. And from my understanding that, you know, even going back to Goose and his prodigy, that if there's an express at will agreement that overrides the implied contracts or the covenant of good faith and fair dealing. So that that is not at issue here is my understanding. Well, the Karma case, which was cited, the California Supreme Court case in 1992, made clear that the covenant has particular application requiring discretion to be exercised in good faith. So just simply saying that it's at will and at discretion doesn't necessarily answer it. Well, so Goose was in 2000. And so this case was prior to that. And as an employment practitioner, I've I've rarely seen an implied covenant, good faith and fair dealing claim that doesn't get overridden by these express contracts, in my understanding. So to me, I do think that that does express agreements would override any sort of implied covenant for good faith and fair dealing. All right. Thank you for responding there. All right. Thank you very much. Mr. Williams. Yes, thank you. Just a few quick points. I'm not sure how much time I have. Oh, there we go. OK. I want to circle back to the accrual issue. And I think loyal to its essence on the accrual issue, we have two competing inferences. Both of those inferences are drawn from the fact that the Callahan accounts are being poached by other salespersons. The inference the district court drew from Kenan's knowledge of that poaching was that that put him on notice that Martinez had committed fraud. That Martinez's original representation that those accounts were protected was fraudulent. And so from the first time that Kenan saw that poaching and then elevated it to Park and then Park elevated it to Martinez, the district court drew that inference against Kenan. But that's not the proper standard on summary judgment. The competing inference that it should have drawn is that when Kenan finds out about those poached accounts and he asks Park, who, by the way, as an independent witness, corroborated Kenan's position with respect to the original promise and then Martinez's repeated assurances that he would look into it. Well, what happens? Kenan asks about those poached accounts and Martinez says, I'm going to look into it. And that's perfectly reasonable to the extent that Martinez is the ultimate arbiter of who gets what accounts under the rules of engagement. And it's consistent with Martinez's prior representation that those accounts are poached. I'm sorry, that those accounts are protected. If they were not protected, Martinez had the opportunity right then and there to tell both Park and Kenan that, but he doesn't do that. And that brings up the second point that I want to raise in addition to that competing inference, which again, at summary judgment, I think means that summary judgment has to be denied. But what was Kenan to do? If we look at where the district court drew the line for approval, it's late 2005, early 2016. Okay? If the one-year statute of limitations starts at that time, are we saying that Kenan should have sued his employer before he was ever terminated for not making quota? Before Martinez ever told him that these accounts wouldn't be rectified or that he wouldn't credit those accounts back to Kenan so he could make his quota? I don't think that's what the laws should encourage Kenan to do. What Kenan did here was act diligently. He talked to his immediate supervisor, Park, who corroborated his view. He talked to Martinez, and Martinez told him that it would be taken care of. When he asked for a reconciliation, when he first started getting performance reviews after that initial period where his commissions weren't tied to quota, he kept asking Martinez, what about these accounts? What about these accounts? And Martinez kept telling him, I'll look into it. Of course, Martinez had that ability to do so, and he didn't. And it was only when Martinez told him in March of 2017 that those accounts weren't protected that Kenan had knowledge of unlawful conduct at that point. Up until that point, poaching of accounts by other salespeople was not unlawful and was not actionable. I want to say one quick word in light of the court's question on the implied covenant claim. I think that Cox continues to conflate the implied covenant claim with an implied in fact contract, and it's a separate claim. The implied in fact contract claim was not pursued on appeal. The implied covenant claim was, and the implied covenant claim has nothing to do with goods or with the promise of continued employment. It has everything to do with Martinez's discretion and how that discretion was exercised during the performance of the employment contract. And he had to exercise it in good faith, consistent with what? Consistent with the representations that he previously made to Kenan about the protected accounts, which again, Park corroborated as well. So I just want to clarify there's this distraction, I think, with an implied in fact claim, which is different than the implied covenant claim. Unless the court has any further questions, I'm prepared to submit. Any questions? Judge Owens? Judge Settle? No. Okay. Well, thank you both for your oral arguments today. I really appreciate it. Mr. Williams, Ms. Foti, excellent presentations. Thank you so much. And so the case of Lonnie Kenan v. Cox Communications, California LLC is now submitted.
judges: Murguia, Owens, Settle